IN THE UNITED STATES DISTRICT COURT

FOR THE ELEVENTH CIRCUIT

DEALERSHIP TECHNOLOGIES, LLC     *
D/B/A WINBOATS, LLC &            *
BRYAN POTZNER,                   *
                                 *
            Plaintiffs,          *
                                 * CIVIL ACTION
v.                               * FILE NO. 2:22-CV-172-RWS
                                 *
MADISON MARINE SERVICES, LLC,    *
                                 *
            Defendant.           *

## PLAINTIFFS' COMPLAINT FOR BREACH OF CONTRACT AND FOR ATTORNEY'S FEES, COURT COSTS, AND RELATED EXPENSES

Comes now, the Plaintiff, DEALERSHIP TECHNOLOGIES, LLC D/B/A WINBOATS, LLC & BRYAN POTZNER (hereinafter "Plaintiffs" or "Winboats" as context may require), and files this their Complaint for Breach of Contract; and for Attorney's Fees, Court Costs, and Related Expenses against Defendant Madison Marine, (hereinafter "Defendant") and shows the Court as follows:

## I. THE PARTIES, JURISDICTION, AND VENUE

1.

Plaintiff DEALERSHIP TECHNOLOGIES, LLC D/B/A Winboats, LLC is a Domestic Limited Liability Company Registered with the Georgia Secretary of State, doing business in Georgia, and is authorized to bring this action.

1

2.

Plaintiff BRYAN POTZNER is the Owner and Registered Agent of DEALERSHIP TECHNOLOGIES, LLC D/B/A WINBOATS, LLC and is an individual and is a Georgia citizen and is authorized to bring this action.

3.

The Defendant, MADISON MARINE SERVICES, LLC, is a resident of Travis County, Texas whose address according to the agreement at issue is 1600 Commanders Point Austin, TX 78734.

4.

Defendant may be served by way of the registered agent, Lawyer's Aid Service, Inc., located at 505 West 15th Street, Austin, Texas 78701.

5.

Alternatively, Plaintiff's best available efforts to confirm Defendant's current address have also revealed a possible address of 9595 Six Pines Drive, Suite 6320, The Woodlands, Texas 77380.

6.

Pursuant 28 U.S.C. § 1391, and the Agreement at issue in this matter, Defendant is subject to the jurisdiction of this Court and venue is proper in the Northern District of the Eleventh Circuit of the United States District Court.

## II.  <u>FACTUAL BACKGROUND AND GENERAL ALLEGATIONS</u>

7.

The Plaintiff hereby realleges and incorporates above Paragraphs 1-6 herein.

8.

Defendant is a yacht dealer and broker, which also performs boat maintenance and repair services.

9.

Plaintiffs are the exclusive owners of all rights and interests in the Winboats Dealer Management System, a dealer management computer software program exclusively created and designed by Plaintiffs, consisting of several different "modules", including a Sales and Customer Relations Manager Module, a Service and Parts Module, a Service Scheduler Module, and a Quickbooks® Integration Module, all of which perform various dealer management functions.

10.

Defendant entered-into a binding, written agreement with Plaintiffs on August 31, 2020 for the purpose of gaining use of, and access to, the Winboats Dealer Management System and services described in Paragraph 9 of this Complaint and in the attached Agreement. Exhibit "A."

3

11.

Plaintiffs made attempts on their own to compel payment from Madison Marine but were unsuccessful.

12.

Defendants were sent a Demand for payment by Plaintiff's Counsel on January 13, 2021 notifying them that they were in default of their contractual obligation to Plaintiffs to pay monthly recurring fees, and that Plaintiffs were aware of the fact that Madison Marine was allowing for two additional concurrent license users not provided for, or stipulated to, and therefore not paid-for, in the Agreement. Exhibit "B."

13.

Madison Marine did not respond in any way to the demand.

14.

Madison Marine has paid some money for technology and licensing already rendered pursuant to the Agreement, but as of the time of this filing it is now two months deficient in the monthly recurring fee and the two additional license fees owed.

15.

Because Defendant has breached their Agreement with Plaintiffs, and because Plaintiffs have been unsuccessful in compelling payment for licenses and services rendered to Defendant, Plaintiffs have

4

been damaged and are forced to retain counsel to seek relief from this Court.

### III. COUNT I- BREACH OF CONTRACT

16.

The Plaintiff hereby realleges and incorporates above Paragraphs 1-15 herein.

17.

Defendant entered-into a binding, written agreement with Plaintiffs on August 31, 2020. Exhibit "A."

18.

Written Agreement at issue in this matter is represented by a written AGREEMENT FOR USE OF THE WINBOATS DEALERSHIP MANAGEMENT SYSTEM and a separate written PAYMENT SCHEDULE that is incorporated by reference into the AGREEMENT FOR USE OF THE WINBOATS DEALERSHIP MANAGEMENT SYSTEM written instrument (hereinafter, Agreement for Use of the Winboats Dealership Management System to be referred to as, "Usage Agreement" individually and "Usage Agreement" & Payment Schedule document are combined and collectively referred to as context may require as the "Agreement" and both are represented together as Exhibit "A").

19.

Agreement was executed by authorized agent or representative of Madison Marine, Ms. Britthaney Smith on August 31, 2020.

20.

Usage Agreement at issue in this matter was initialed by Ms. Smith on behalf of Madison Marine on each individual page of pages 1-7 and was signed in full on the Payment Schedule and the very last page of the Usage Agreement.

21.

In contemplation of the Agreement, each Party to the Agreement performed each of their respective obligations pursuant thereto until approximately December 1, 2020 when a monthly recurring payment stipulated to in the Agreement was due, but not made by Defendant.

22.

Plaintiffs also discovered on or about this time that additional concurrent license users were being permitted by Defendant even though the Agreement permitted only 3 total users.

23.

Plaintiffs made attempts on their own to recover the monies owed under the monthly recurring payment that was missed by Defendant and to arrange for either additional license users to be added to the agreement, or to recover monies owed for the additional license users Defendant was permitting, but not paying for under the Agreement.

6

24.

Plaintiffs were unsuccessful accomplishing this on their own.

25.

Defendant was sent a Demand for payment by Plaintiffs' Counsel on January 13, 2021 notifying Defendant that they were in default of their contractual obligation to Plaintiffs to pay monthly recurring fees, and that Plaintiffs were aware of the fact that Madison Marine was allowing for two additional concurrent license users not provided for, or stipulated to, and therefore not paid-for, in the Agreement. Attached herewith as Exhibit "B."

26.

Madison Marine did not respond in any way to the demand.

27.

Madison Marine has paid some money for technology and licensing already rendered pursuant to the Agreement, but as of the time of this filing it is now two months deficient in the monthly recurring fee and the two additional license fees owed.

28.

Defendant has demonstrated no meaningful gesture, act, or communication to Plaintiffs that they intend to remedy their nonperformance.

7

29.

Because Defendant has breached their Agreement with Plaintiffs, and because Plaintiffs have been unsuccessful in compelling payment for licenses and services rendered to Defendant either on their own, or by demand of Plaintiffs' Counsel, Plaintiffs have been damaged in an amount to be determined at trial and are forced to retain counsel to seek relief from this Court.

**IV.  COUNT II-ATTORNEY'S FEES COURT COSTS AND RELATED EXPENSES**

30.

The Plaintiff hereby realleges and incorporates above Paragraphs 1-28 herein.

31.

Defendant has acted in bad faith, has been stubbornly litigious in his actions to withhold monies owed to the Plaintiffs, and has caused Plaintiffs unnecessary trouble and expense. Therefore, pursuant to Fed. R. Civ. P. 54, Plaintiffs are entitled to recover reasonable attorney's fees and expenses incurred by having to commence the instant litigation to recover the amounts owed by Defendant.

**WHEREFORE**, Plaintiff prays that this Court grant the following relief:

8

(a)    Enter  a  judgment  against  Defendant  and  in  favor  of
       Plaintiffs on all counts of this Complaint;

(b)    Award  Plaintiffs  all  reasonable  attorney's  fees  and
       expenses of litigation; and

(c)    For  such  other  relief  and  further  relief  as  this  court

deems just and proper.


Respectfully submitted this 30TH day of August 2022.



                         _____
                         Jason A. Black
                         Georgia Bar No. 827136
                         Dave McDonald
                         Georgia Bar No. 217778
                         Attorneys for Plaintiffs
                         167 Lee Street
                         Jefferson, Georgia 30549
                         Telephone: (706) 387-8975
                         Facsimile:
                         Email: Jason@wblegal.net

# EXHIBIT "A"

IN THE UNITED STATES DISTRICT COURT

FOR THE ELEVENTH CIRCUIT


DEALERSHIP TECHNOLOGIES, LLC   *
D/B/A WINBOATS, LLC &      *
BRYAN POTZNER,          *
                          *
       Plaintiffs,   *
                          * CIVIL ACTION
v.                       * FILE NO._____
                          *
MADISON MARINE SERVICES, LLC,  *
                          *
       Defendant.    *

## CERTIFICATE OF SERVICE

This is to certify that I have this date served upon all parties of record with a copy of **PLAINTIFFS' COMPLAINT FOR BREACH OF CONTRACT AND FOR ATTORNEY'S FEES, COURT COSTS, AND RELATED EXPENSES** by statutory electronic service pursuant to O.C.G.A. § 9-11-5(b) and by depositing a copy of the same in the United States Mail, postage prepaid, as follows:

Brett Jensen, Madison Marine
9595 Six Pines Drive Suite 6320
The Woodlands, Texas 77380

Respectfully Submitted this 31st day of August, 2022.

_____
         Jason Black
         Georgia Bar No. 827136
         *Attorney for Defendant*

167 Lee Street
Jefferson, Georgia 30549
706-387-8975
Jason@wblegal.net

12

# EXHIBIT "A"



**WEINSTEIN**
**and BLACK**
ATTORNEYS AT LAW

January 13, 2021

<u>VIA CERTIFIED MAIL</u>
<u>ARTICLE #: 7020 1810 0000 3851 3946</u>

Brett Jensen
Madison Marine
9595 Six Pines Dr.
Suite 6320
The Woodlands, TX 77380

Re:  Demand to Pay Money Owed to Dealership Technologies LLC/dba WinBoats

Mr. Jensen,

The undersigned and this law firm represent Dealership Technologies LLC/dba WinBoats ("Client" or "WinBoats"). You are receiving this letter concerning monies currently owed. As of the date of this letter, Madison Marine is in default of its contractual obligation to WinBoats to pay the agreed-upon sum of $890.00 per month recurring. Further, it has come to the attention of our client that two additional concurrent license users have been added by Madison Marine to the existing three licensees stipulated to in the contract signed by Ms. Britthaney Smith as a representative of Madison Marine on August 31, 2020. Considering the existing $890 monthly payment obligation per the Agreement and the two additional concurrent license users which have been added by Madison Marine at $55 per month, per licensee, $1,000.00 is now due to my Client immediately. Please know any communication for my Client in this matter should be directed to me.

While it is true that WinBoats has been paid some money for technology and licensing already rendered, the existing contract between WinBoats and Madison Marine demands an agreed-upon, recurring automated payment for technology transfer and licensing, as well as cloud hosting, of which Madison Marine is now one month deficient. Failure to perform in accordance with the terms of your agreement with WinBoats has placed you in default. Madison Marine may redress this concern through the provision of a new ACH payment form and $1,000.00 payment immediately. Failure to do so will be considered to be an anticipatory breach of the contract and this law firm will have no other option but to file suit pursuant to the agreement.

It is our hope that this is nothing more than an accidental oversight on behalf of Madison Marine, which can be rectified swiftly. However, if Madison Marine's failure to comport with the terms of the contract is in any way an attempt to avoid paying on the continuing monthly obligation set forth in the Contract and to sever the existing relationship, then Madison Marine is in violation of the Agreement. If that is the case, Madison Marine is subject to the terms and conditions

provided in Section VII (1) of the Agreement, which requires Madison Marine to tender all fees (including any accrued late fees) that are currently due and that would be payable during the entire two-year term of the Agreement if termination is sought.

Therefore, I am respectfully requesting that you pay the amount that is owed. My Client wishes to resolve this matter amicably and seeks only to be paid in accordance with the Agreement that was signed. If there should be any concerns moving forward, please feel free to reach out to me at the number on the bottom of this letter.

Sincerely,

WEINSTEIN & BLACK

David P. McDonald, Esq.

Weinstein & Black
167 Lee Street
Jefferson, Georgia 30549
706.387.8975
Dave@wblegal.net

# EXHIBIT "B"

11

Dealership Technologies, LLC /dba Winboats
3408 Dockside Shores Dr.
Gainesville, GA 30506          770-660-3200

**Madison Marine**
1 Location Cloud Hosted



### PAYMENT SCHEDULE

| Winboats DMS | | | | |
|---|---|---|---|---|
| **Total Number of Locations** | | | | 1 |
| **Initial Amount (first location)** | | | | $8,950.00 |
| **Initial Amount (additional locations)** | | | | $0.00 |
| **Recurring Amount (first location)** | | | | $725.00 |
| **Recurring Amount (additional locations)** | | | | $0.00 |
| | | | Initial Winboats Setup TTL | $8,950.00 |
| | | | Winboats Recurring Monthly TTL | $725.00 |
| | | | | |
| **Cloud Hosting** | **3 Total Users** | | | |
| Initial Setup & Email Integration with Thunderbird | | Non Recurring | | |
| Initial Cloud Quickbooks & Email Integration | | Non Recurring Optional | TBD | |
| **Cloud Server (Separate Dedicated Server)** | 0 | | $ 65.00 | $0.00 |
| **Cuncurrent User Licenses (Monthly)** | 3 (First 20 Users) | | $ 55.00 | $165.00 |
| **SPLA Office Per User (Monthly)** | 0 | | $ 18.67 | $0.00 |
| | | Initial Cloud Hosting Setup TTL | | $0.00 |
| | | Cloud Hosting Recurring Monthly TTL | | $165.00 |
| | | | | |
| **Total Initial Amount** | | | | $8,950.00 |
| **Total Monthly Recurring Amount** | | | | $890.00 |
| | | | | |
| **Frequency** | | | | Monthly |
| **Total Number of Recurring Payments** | | | | |
| **First Recurring Payment Due On** | | | | 10/1/2020 |
| **Final Recurring Payment Due On** | | | | 9/1/2022 |

### ADDITIONAL SERVICES

Boat line templates need to be discussed unless previously built. Depending on the size of job, the templates range from $500-$1000 per manufacturer per model year. Boat line templates are an option and include updates and changes for the current model year. It is the client's obligation to provide the data in excel format for template construction. The client has access to build and maintain their own templates without additional fees.

**2021 Boat Lines**

| Setup Fees (One time Charge) | |
|---|---|
| Initial Winboats Setup TTL | $8,950.00 |
| Initial Cloud Hosting Setup TTL | $0.00 |
| TTL 2020 Boat Line Templates | $0.00 |
| **Total Initial Startup Fees** | **$8,950.00** |
| Recurring Fees (Monthly) | |
| Cloud Hosting Recurring Monthly TTL | $165.00 |
| Winboats Recurring Monthly TTL | $725.00 |
| **Total Recurring Monthly Charges** | **$890.00** |

**Total Templates**          $    -

Britthaney Smith
(Printed Name of Client or agent)

B. Smith
(Signature of Client or agent)

8/31/20
Date

Please return signed copies to bryan@winboats.com



# AGREEMENT FOR USE OF THE WINBOATS

# DEALERSHIP MANAGEMENT SYSTEM

## I.    PARTIES

This is an agreement made and entered into by and between **Dealership Technologies LLC.** (hereinafter referred to as "the Provider"), and **Madison Marine** (hereinafter referred to as "the Client," and collectively referred to as "the Parties"), a Marine Dealership, on this date, **August 28, 2020.**

## II.    PURPOSE

The Provider is the exclusive owner of all rights and interests in the Winboats Dealer Management System (hereinafter "the Winboats System"), a dealer management computer software program exclusively created and designed by the Provider, consisting of several different "modules", including a Sales and Customer Relations Manager ("CRM") Module, a Service and Parts Module, a Service Scheduler Module, and a QuickBooks® Integration Module, all of which perform various dealer management functions.

This Agreement sets forth the Parties' agreement concerning the Provider's sale to the Client of the limited use of the WinBoats System at certain designated dealerships of the Client.

## III.    SERVICES TO BE PERFORMED BY PROVIDER

1. **Use of the Designated Winboats System Modules:** The Provider agrees to permit the Client to use the WinBoats System and the modules designated below.  The Parties agree that the Client will use the WinBoats System and modules only for the Client's commercial sales and services operations.

1

Client or Client's Agent Initials:
Provider or Provider's Agent Initials: _____

a. **Authorized Use at Discrete Dealership Physical Locations:** This Agreement permits the use by the Client of the WinBoats System through the installation of the WinBoats Software Client ("the Software Client") at the designated physical dealership locations only:

Location 1: **1600 Commanders Point Austin, TX 78734**

Location 2:

Location 3:

Location 4:

b. **Module Subscriptions:** The Provider agrees to allow the Client to use the following Winboats Dealer Management System Modules for the duration of this Agreement at the above-listed dealership physical location(s):

**X** **Sales and Customer Relations Manager Module:** This module includes: (1) Customer Relations Manager (CRM) with Follow up Reminder, Customer Journal, and Quote/Purchase History; (2) Boat and Prospect Finder, Customized Professional Boat Quoting for Stock and Ordered Boats; (3) New, Used, Consigned and Brokerage Inventory; (4) Build a Boat; (5) Individual E-Mailing; (6) Mass Marketing E-Mailing; (7) Reports; (8) Boat Inventory Export Links to Dealer Spike; and (9) E-Mail Lead Scanner.

**X** **Service and Parts Module:** This module includes: (1) Work Order Generation; (2) Parts Invoicing; (3) Parts & Accessory Inventory; (4) Manufacturer Service Parts Importing; (5) Parts Ordering; (6) Flat Rate; (7) Canned Jobs; (8) Scanner Function; and (9) Stock & Sales History Reporting.

**X** **Service Scheduler Module:** This module includes: (1) Generic Microsoft Excel® Forms Creator; and (2) Fully Automated Service Scheduler with Complete Technician Schedules.

**X** **QuickBooks Integration Module for Quickbooks Desktop:** This module includes a QuickBooks® Link, which permits you to connect via Intuit® SDK to: (1) Create Customers; (2) Invoices; (3) Credit Memos; and (4) Automated Journal Entries. It is recommended that the Client contracts with Winboats DMS to setup their QuickBooks® company file with a marine industry chart of accounts customized to your boat brands. This Setup contract is not part of this agreement unless noted under the **Payment Schedule's Additional Services.**

Client or Client's Agent Initials

Provider or Provider's Agent Initials: _____

2

2. **Remote Installation and Set-Up of WinBoats Dealership Management System:**

    a. **Installation:** The Provider agrees that it will remotely install the Software Client onto the Client's dealership computer or computers. This installation is limited to the physical dealership locations specified above in Section III(1)(a).

        i. **Client Provides All Hardware:** The Client agrees that it will provide all necessary hardware, including internet connection, to allow the installation process to be completed.

        ii. **Limitation of Provider's Liability:** As described in Section VI: Limitation of Liability, Damages, and Indemnification, the Parties agree that the Provider's liability for any loss or damage caused from the installation of the Software Client is expressly limited as set forth therein.

        iii. **Additional Charges for On-Site Installation:** In the event that on-site installation is either desired by the Client, or required due to problems with the Client's hardware, the Parties agree that additional service fees in the amount of $1,200 per calendar day must be paid by the Client to Provider prior to installation.

    b. **Data Importation:** The Provider agrees that it will remotely assist the Client in importing existing data from inventory and service parts catalogs into the WinBoats System. The Client agrees that, prior to data importation, the Client is responsible for providing the data that it desires to be imported to the Provider in an appropriately formatted Excel File Spreadsheet.

        i. **Limitation of Provider's Liability:** As described in Section VI: Limitation of Liability, Damages, and Indemnification, the Parties agree that the Provider's liability for any loss or damage caused from the incorrect importation of data, or from the use of incorrect data is expressly limited as set forth therein.

        ii. **Additional Charges for On-Site Importation:** In the event that on-site importation is either desired by the Client, or required due to problems with the Client's hardware, the Parties agree that additional service fees may be required and must be paid by the Client to Provider prior to data importation.

3

3. **Remote Training in the Use of the WinBoats System:**

   a. **Definition of Remote Training to Be Provided:** Provider agrees that it will provide the Client and its employees with a maximum of eight hours of remote training for each WinBoats System module purchased. Training includes instruction in a module's operation and assistance with specific tasks that the Client wishes to perform using the module.

      i. **Additional or Onsite Training:** In the event that the Client desires either on-site training or additional training, the Parties agree that additional training fees in the amount of $1,200per calendar day plus expenses must be paid by the Client to Provider prior to training.

4. **Continued Product Updates:** The Provider agrees that it will update the Software Client as new changes are made to ensure that the Client's version of the Software Client is the most current version of the WinBoats Dealership Management System. The Parties agree that it is the Client's responsibility to ensure that the appropriate hardware and internet connection is maintained so that updates may be received promptly and properly installed. This does not entitle the Client to use new modules or programs that Dealership Technologies, LLC. introduces during the contract period without authorization and/or potential changes in monthly fees.

5. **Support for Problems or Errors With the Software Client:** The Provider agrees that it will provide reasonable and timely remote support (via telephone and Web-access) for problems or errors in the functioning of the WinBoats Dealership Management System caused by the Software Client itself. The Parties agree that it is the Client's responsibility to promptly notify the Provider whenever a problem or error in functioning of the WinBoats Dealership Management System is caused by the Software Client. The Parties further acknowledge that it is an inherent characteristic of the Software Client that problems or errors will occur from time-to-time and that such problems may take a period of time to repair and correct.

   a. **Support Does Not Include Additional Training or Errors Caused by Client Hardware:** Although the Provider will make a good-faith effort to assist the Client with any issues caused by the Client's hardware or human error, the Provider has no obligation or responsibility under this Agreement for correcting any problems or errors in the functioning of the WinBoats System caused by sources other than the Software Client itself, including hardware, internet connectivity issues, or human error. "Support" also does not include assistance with importing data or with other tasks, such as the use and operation of features of the Winboats System that are covered in "Training."

## IV.   PAYMENT BY THE CLIENT

1. **Payment in Accordance with Payment Schedule:** In consideration for all of the above services performed by the Provider, the Client agrees to pay all fees described in the attached **Payment Schedule**.

2. **Auto-Payment Required:** The Client agrees that at the commencement of this Agreement it will provide the Provider with a filled out "Winboats Payment Enrollment Form" and the Client further authorizes the Provider to use this form of payment for the charges listed in the **Payment Schedule** and any future authorized **Additional Services**. The Client agrees that, if the form of payment it provides changes, it will promptly give the Provider an updated "Winboats Payment Enrollment Form" and the Client agrees that its

4

Client or Client's Agent Initials: _P𝒮_

Provider or Provider's Agent Initials: _____